UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL S. GRANT,<br><br>        Plaintiff,<br><br>    v.<br><br>D. RIOS,<br><br>        Defendant. | Case No. 1:20-cv-00908-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO EXHAUST AMINISTRATIVE REMEDIES<br><br>(ECF Nos. 41 & 57)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

## I.  INTRODUCTION

Russell Grant ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case is proceeding on Plaintiff's Eighth Amendment excessive force claim against defendant Rios based on Plaintiff's allegations that defendant Rios made Plaintiff's handcuffs too tight and then pushed Plaintiff into a wall and held him there. (ECF Nos. 1, 13, & 14).[1]

On January 10, 2022, Defendant filed a motion for summary judgment on the ground that Plaintiff failed to properly exhaust his available administrative remedies. (ECF No. 41). The undersigned issued Findings and Recommendations to deny the motion for summary judgment because there was "a genuine dispute of material fact regarding whether Plaintiff

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

timely filed a grievance[2] regarding the claim that is proceeding in this action," and that an evidentiary hearing should be set to resolve the dispute. (ECF No. 49, p. 13; ECF No. 50). The District Judge adopted these Findings and Recommendations in part, agreeing "there is a dispute of material fact concerning Plaintiff's exhaustion of available administrative remedies, and . . . an evidentiary hearing is necessary for the Court to resolve the dispute." (ECF No. 50, p. 2). The District Judge declined to deny the motion for summary judgment and added, "This matter is referred to the assigned magistrate judge to conduct an evidentiary hearing to determine whether Plaintiff exhausted his administrative remedies and to re-evaluate the pending motion for summary judgment in light the of [sic] findings adduced at the evidentiary hearing." (*Id.*).

On August 19, 2022, the undersigned conducted the evidentiary hearing by video upon consent of all parties. (ECF Nos. 55, 57). Present at the hearing was Plaintiff, Deputy Attorney General Peter D. Lewicki, Gabriel Lujan, Correctional Counselor and Grievance Coordinator at the SATF, Office of Grievances, and Celena Ramos, Associate Governmental Program Analyst at the SATF, Office of Grievances.

For the reasons that follow, the undersigned reiterates its Findings and Recommendations to deny Defendant's motion for summary judgment due to a dispute of material fact. However, the undersigned now also recommends finding, based on the evidence presented at the hearing, that Plaintiff failed to exhaust his available administrative remedies before filing the operative complaint and that the case should be dismissed.

**II.     BACKGROUND**

The Court refers to its earlier Findings and Recommendations dated April 27, 2022 (ECF No. 49) for a full explanation of the case and the pending motion for summary judgment.

Briefly, this case proceeds on Plaintiff's Eighth Amendment excessive force claim against defendant Rios. (ECF Nos. 1, 13, & 14). On January 10, 2022, Defendant filed a motion for summary judgment on the ground that Plaintiff failed to properly exhaust his available

---

[2] A grievance is also referred to as an appeal or a 602.

2

administrative remedies. (ECF No. 41). On that same day Defendant filed a motion to stay discovery and to modify the scheduling order. (ECF No. 42). On February 22, 2022, the Court granted Defendant's motion to stay discovery and to vacate deadlines. (ECF No. 46). On March 21, 2022, Plaintiff filed his opposition to the motion for summary judgment. (ECF No. 47). On April 5, 2022, Defendant filed his reply.

On April 27, 2022, the undersigned issued findings and recommendations on Defendant's motion for summary judgment. (ECF No. 49).

The undersigned found that the following facts are undisputed:

- The alleged excessive force incident occurred on December 6, 2019. (ECF No. 41-2, p. 4; ECF No. 47, p. 2).

- There was a generally available administrative remedy. (ECF No. 41-2, pgs. 3-4; ECF No. 47, p. 4).

- Plaintiff knew about and used the administrative grievance process, including advancing appeals to the final level of review. (ECF No. 41-2, p. 5; ECF No. 47, p. 4).

- Between December 3, 2019, and June 30, 2020, Plaintiff submitted three appeals and one grievance. (ECF No. 41-2, p. 5; ECF No. 47, p. 4).

- The above-listed appeals did not address Plaintiff's excessive force allegations against defendant Rios. (ECF No. 41-2, p. 5; ECF No. 47, p. 3).

- Plaintiff did not receive a merits decision from the final level of review on a grievance regarding the alleged excessive force incident. (ECF No. 41-2, pgs. 4-5; ECF No. 47, p. 3).

(ECF No. 49, p. 9).

The undersigned also found "that there is a genuine dispute of material fact regarding whether Plaintiff timely filed a grievance regarding the claim that is proceeding in this action." (Id. at 13). Accordingly, the undersigned recommended that "Defendant's motion for summary judgment be denied," that "[t]he stay be lifted and the previously vacated deadlines be reset," and that "[a]n evidentiary hearing be set to determine whether Plaintiff exhausted his administrative remedies by timely filing a grievance regarding his claim that was improperly processed by prison officials." (ECF No. 49, p. 13).

The parties were provided with an opportunity to file objections to the findings and recommendations, but neither party did so. On June 9, 2022, District Judge Jennifer L. Thurston adopted the findings and recommendations in part. (ECF No. 50). Judge Thurston agreed "that there exists a genuine dispute of material fact," but declined to deny the motion for summary judgment at that time. (Id. at 2). Judge Thurston referred this matter "to the assigned magistrate judge to conduct an evidentiary hearing to determine whether Plaintiff exhausted his administrative remedies and to re-evaluate the pending motion for summary judgment in light the of findings adduced at the evidentiary hearing." (Id.).

On August 19, 2022, the undersigned held the evidentiary hearing. (ECF No. 57).

### III.    EVIDENTIARY HEARING

   a.  Exhibits

At the evidentiary hearing, Defendants submitted the following documents into evidence:[3]  Bed Assignments for Plaintiff, dated December 20, 2018, through January 8, 2021, (Exhibit A); Inmate/Parolee Appeals Tracking System ("IATS") - Levels I and II for Plaintiff at Substance Abuse Treatment Facility (SATF), dated October 7, 2020, (Exhibit K); SOMS Offender Grievances/Appeals for Plaintiff, dated November 12, 2021, (Exhibit L); Appeal Log Nos. SATF-E-20-00068, SATF-E-20-01314, and SATF-E-20-03379, (Exhibits M-O); and Grievance Log Nos. 000000009025, 000000010728, and 000000029620, (Exhibits P-R). Defendants also called the following witnesses to testify: Gabriel Lujan, a Correctional Counselor and Grievance Coordinator at the SATF, Office of Grievances, and Celena Ramos, an Associate Governmental Program Analyst at the SATF, Office of Grievances.[4]

Plaintiff submitted the following documents into evidence: Plaintiff's Initial Disclosures (Summary), dated June 20, 2021, (Exhibit B); Plaintiff's Declaration in Support of Scheduling Conference Statement, dated June 14, 2021, (Exhibit C); and CDCR (California Department of

---

[3] In deciding the dispute of fact, the Court informed the parties that only the evidence admitted at the evidentiary hearing is considered. (ECF No. 51, p. 3).

[4] Throughout testimony, reference was made both to the Office of Grievances and Office of Appeals. These terms appear to have been used interchangeably. For purposes of this Findings and Recommendations, the Court refers to this office as the Office of Grievances.

Corrections and Rehabilitation) 22 Forms, dated January 7, 2020, March 11, 2020, and June 16, 2020, (Exhibits G-I). Plaintiff testified on his own behalf.[5]

      a.   <u>Gabriel Lujan's Testimony</u>

At the evidentiary hearing, the defense first called Gabriel Lujan to testify. Mr. Lujan is a Correctional Counselor and Grievance Coordinator[6] at SATF. Mr. Lujan has been employed at CDCR since February 2010 and worked as a correctional officer until he became a correctional counselor in March 2017. Mr. Lujan was assigned as a counselor in the Short-Term Restricted Housing Unit (STRH) from January 2021 through December 2021 but was not a counselor in that unit when Plaintiff was housed there.

Mr. Lujan became the Grievance Coordinator in December 2021 and testified as to his duties and the procedures for the Office of Grievances. The Office receives all grievances, either submitted by mail or through the facility's secure lockbox system. Each document undergoes an initial review for imminent safety or security risks and is assigned a log number, regardless of whether the grievance or appeal is ultimately accepted. The Office then considers the merit of each document. Although Mr. Lujan was not the Grievance Coordinator in December 2019, he testified that the review process for grievances and appeals was similar at that time. After each document was assigned a log number, a determination was made as to where each document needed to be routed. Inmates were notified as to the status and decisions of grievances and additional available options.

Mr. Lujan testified that he is a custodian of records for the Office of Grievances and described the archiving process for documents at SATF as of December 2019. Once a decision is reached, documents are scanned into electronic form and the physical copies are stored in a secure location in the Office of Grievances. Mr. Lujan then authenticated Exhibits K and L. Mr. Lujan testified that Exhibit K is a list generated from the Inmate Appeals Tracking System

---

[5] Plaintiff offered Exhibit S (Declaration of Plaintiff in Support of Motion for Opposing Summary Judgment (ECF No. 47, at pp. 6-8). For the reasons stated on the record, Exhibit S was not admitted into evidence.
[6] Throughout testimony, Mr. Lujan's title was referred to as "Grievance Coordinator" or "Appeals Coordinator." The titles appear to have been used interchangeably. For simplification, the Court refers to Mr. Lujan as a Grievance Coordinator.

5

(IATS) showing appeals filed by Plaintiff through June 2020. Exhibit L is a list generated from the SOMS system showing appeals filed by Plaintiff since June 2020. Mr. Lujan explained that IATS transitioned to SOMS as of January 2020. Mr. Lujan also authenticated Exhibits M-R.

Mr. Lujan testified as to the process of how inmate grievances and appeals were submitted as of December 2019. Each facility has a secure lockbox accessible by inmates and each housing unit has 602s available. Inmates may drop their documents into the lockbox and the documents are usually collected by a non-custody staff member. The documents are hand-delivered to the Office of Grievances before 11:00 am each day except Saturday and Sunday. As inmates in STRH require an escort and must be restrained during escorts, Mr. Lujan testified that inmates may slide documents under or attach documents to the door to be deposited into the secure lockbox.

Mr. Lujan testified that the appeal process was available to all inmates from December 3, 2019, through 2020. Mr. Lujan identified Exhibit M as an appeal Plaintiff submitted, dated December 16, 2019. The appeal concerned the transfer of Plaintiff's personal property from CIM[7] to SATF. The appeal was received by the Office of Grievances on December 20, 2019. Exhibit M6 is a CDCR Form 22, which Mr. Lujan testified is used for various purposes and is often used by inmates to track the grievances and appeals process. The Form 22 was submitted with, and sought a log number for, Plaintiff's appeal dated December 16, 2019.

Mr. Lujan identified Exhibit N as an appeal Plaintiff submitted in February 2020 which requested a reply to a previously submitted appeal. The appeal referenced an issue which occurred at CRC[8], but the appeal was submitted at SATF. The appeal did not concern the use of excessive force.

Mr. Lujan identified Exhibit R as a grievance log generated by the SOMS system.[9] The grievance concerned the alleged excessive force incident[10] involving defendant Rios and was

---

[7] "CIM" refers to the California Institute for Men.
[8] The Court assumes that "CRC" refers to the California Rehabilitation Center.
[9] Although Mr. Lujan referred to Exhibit R as a grievance log, it appears to be an acknowledgement of receipt of Plaintiff's grievance, which was generated by Plaintiff's letter to the FBI.
[10] The Court notes that although additional allegations were made in the grievance, those allegations are not the subject of the present action.

prompted by some correspondence rather than the filing of a 602. Exhibits R4-R6 appear to be a copy of the letter Plaintiff submitted to the FBI, dated January 7, 2020. Exhibit R6 contains the following allegation by Plaintiff against defendant Rios:

> On 12-03-2019, I arrived at SATF/Corcoran from CIM and was housed in ASU of Corcoran. Within the second day of being housed there multiple officers were displaying rude and demoralizing behavior toward me. Officer Rios would tighten the cuffs on me and grab my arm tight when walking me to the shower. He once told me, I thought I could get away from his family member that worked ASU in Chino also.

¶ 4.

Mr. Lujan said that Exhibit R2 indicates that Plaintiff's grievance was rejected based on when it was filed.[11] However, allegations such as excessive force are investigated outside of the grievance process even if they fail to meet time requirements. Mr. Lujan testified that no previous grievances or appeals, nor any filed on or about December 5-6, 2019, alleged that defendant Rios used excessive force. Mr. Lujan did not locate any appeals or grievances filed by Plaintiff alleging that his appeal about defendant Rios had been lost, destroyed, or mishandled.

On cross-examination, Mr. Lujan acknowledged that one method in which inmates access forms is by asking officers for them. Mr. Lujan testified that he has never seen appeals be lost or go missing during his tenure as Grievance Coordinator.

### b. Celena Ramos's Testimony

The defense next called Celena Ramos to testify. Ms. Ramos is an Associate Governmental Program Analyst (AGPA) in the Office of Grievances at SATF. Ms. Ramos has held that position since 2012 and has been employed by CDCR since 2000. Prior to working in the Office of Grievances, Ms. Ramos worked as an office assistant and correctional officer, and has worked at RJD and SATF. Her job duties as an AGPA as of December 2019 consisted of receiving and reviewing all 602s submitted by inmates. Inmates submit 602s about a wide

---

[11] Mr. Lujan did not testify as to when the grievance was filed but Exhibit R2 lists the date as August 14, 2020. It further indicates that the date Plaintiff became aware of the incident was December 5, 2019, and that Plaintiff should have filed his claim on or by January 4, 2020.

variety of matters, ranging from broken property to safety concerns. Ms. Ramos testified that she first reviewed 602s for urgent matters, and any such documents were set aside and routed to Ms. Ramos's supervisor. Each 602 received a log number, regardless of whether it was ultimately accepted, rejected, or cancelled. Each document was then reviewed and was either rejected or assigned out.

Ms. Ramos testified as to the process by which 602s arrive to the Office of Grievances. The 602s are collected by mail, through secure lockboxes located in every housing unit, or by hand delivery of staff members who receive the 602s directly from inmates. The 602s are delivered daily to the Office of Grievances.

Ms. Ramos testified that another of her job duties is to track trends. The Office of Grievances receives approximately 800-900 appeals each month. Ms. Ramos said she would be able to identify any noticeable changes in trends, such as an increase or drop in the number of appeals received. Between December 2019 and January 2020, Ms. Ramos was not aware of any missing appeals or sudden changes or decreases in the number of appeals coming in and recalled no concerns about missing or lost appeals. Ms. Ramos testified that she was never made aware of Plaintiff submitting an appeal between December 2019 and January 2020 that went missing. Ms. Ramos explained the process she would follow if she were to notice a sudden change in the number of appeals from a housing unit that normally submits a high volume of appeals. The Office of Grievances keeps track of the individuals who deliver grievances, and Ms. Ramos is aware of what should be submitted. Ms. Ramos explained that if something was missing from a complex, she would contact an office technician to determine whether someone had picked up the grievances. If needed, an individual from the Office of Grievances would make sure the documents were processed.

Ms. Ramos testified that she is familiar with STRH and the location of Form 22s and 602s in the unit. The forms are kept near the office of the lieutenant and sergeant, which is also next to the secure lockbox. Inmates typically receive forms by asking for them directly from staff. Ms. Ramos was asked on cross-examination if it is possible that an inmate could request a form from an officer who would not give them one because they do not want to. Ms. Ramos

8

said it would depend on what was happening, because in an emergency an officer will not "drop everything." In her experience, having worked as a correctional officer in STRH, Ms. Ramos testified that she always gave out forms when requested and that her partners did as well.

        c.   Plaintiff's Testimony

Plaintiff testified on his own behalf. Plaintiff testified that on December 8, 2019, he turned in a 602 to an officer. Plaintiff did not know the name of the officer, nor could he recall having seen the officer before. Plaintiff's 602 did not include a Form 22 as Plaintiff was not provided with one. Plaintiff's 602 grievance described the conduct he had been subject to by defendant Rios. When Plaintiff did not receive any update about the status of his grievance, he wrote to outside agencies, including the United States Attorney General's Office and the Federal Bureau of Investigation. Plaintiff entered Exhibits G-I into evidence, which consist of three Form 22s Plaintiff submitted when he mailed letters to outside agencies. Plaintiff testified that the letter he wrote to the FBI "showed up as an appeal" after Plaintiff filed the present action against Defendant. Plaintiff is unsure of how this occurred, as he did not turn the FBI letter into the appeals office. Exhibits R4-R6 appear to be a copy of the letter Plaintiff mailed to the FBI, dated January 7, 2020.[12] Plaintiff used 602s for all grievances and appeals he filed.

Plaintiff acknowledged that, prior to filing the complaint in this case on June 30, 2020, he had not been given notice that his appeal was received. Plaintiff said response times for appeals vary depending on the type of appeal, and some responses come even sooner than the 30-day period. Plaintiff acknowledged that receipt of a Form 695 after submitting an appeal indicates that the appeal was received and is being processed. (Exhibit M2). Plaintiff said he was not able to keep a copy of the 602 he submitted on December 8, 2019, and he had not attached a Form 22 with it. Plaintiff explained that he normally would have attached a Form 22 as proof of submission, because sometimes officers will "get rid" of the appeal forms. Plaintiff

---

[12] Exhibit R was entered into evidence by Defendant, and Plaintiff did not reference Exhibit R by name. However, a review of the evidence indicates this exhibit contains the letter Plaintiff wrote to the FBI. Its date of January 7, 2020, also corresponds to the date on Exhibit G, which is the Form 22 Plaintiff submitted when he wrote to the FBI.

was questioned by defense counsel and testified as follows:

> Q Let me ask you this, so were you able to retain a copy of your 602 form that you say, that you testified you submitted December 8?
>
> A No I didn't. What I usually do is put a 22 form with it because the officers sometimes, they toss them. And I wasn't able to get a 22 form, I have proof, so that's my proof that I sent it in at that time. That's what I usually use. So this is just something right here they sent back, but they, sometimes, they'll toss the appeal [inaudible].
>
> Q So you're testifying that sometimes the officers toss the appeals. What do you mean by that?
>
> A They get rid of your appeal, if it's something that has something to do with something bad for one of their peer officers, they get rid of them.
>
> Q Okay, have you ever seen that happen?
>
> A No, I mean I've never seen it in front of me. But they can act like they're gonna to turn it in and don't turn it in.
>
> Q Do you have any, did you ever witness that happen with the appeal that you handed over to the floor officer on December 8?
>
> A I had several other 22 forms that me and you had talked on the phone about when I first filed my appeal about missing appeals, that wasn't in there when I had [inaudible] the other 22 forms [inaudible] pertaining to when I was at CMI[13] and they didn't answer to those appeals that we had talked about, which the 22 forms I have show that they didn't answer them.
>
> Q Okay so as I understand your testimony, you're aware of other times where appeals that you had submitted have gone missing . . . .

Hr'g. 11:18-11:20 a.m.[14]

Plaintiff did not witness the floor officer who took his 602 on December 8, 2019, discard the form, but as Plaintiff was in his cell, he did not see what the officer ultimately did

---

[13] The Court assumes that "CMI" is meant to refer to the California Institution for Men (CIM).

[14] As there is not a transcript of the hearing, this transcription is unofficial and based on the audio file, which is available to the parties upon request.

10

with it. Plaintiff thought that this was the first and only time he saw the officer, and he did not speak to the officer later to ask about the status of the appeal because the officer was gone. Plaintiff was asked by defense counsel if he asked other officers about the appeal, and Plaintiff testified as follows:

> Q So you never spoke to [the floor] officer about the missing appeal. Did you ever ask any other officers about the appeal that you think went missing?
>
> A No, 'cause when it happened, when I was pushed up against the wall by Officer Rios, it was other officers that was there, that stood there and watched what went on and didn't stop nothing.
>
> Q Okay, so your testimony is that you think other officers interceded and got involved to destroy this, or get rid of this appeal?
>
> A Yes.
>
> Q Okay. But you never witnessed that, you don't have-
>
> A -No, I never, I never, I never witnessed it but I [inaudible] not getting a response back on it was just basically what it was.
>
> Q Do you acknowledge that you could have asked any number of officers to look into it?
>
> A They would've told me to write a 22 form.
>
> Q Okay, and did you?
>
> A No.
>
> Q Okay. Did you ever talk to your correctional counselor about it?
>
> A No, 'cause it's a different facility, and then they would've said I should've asked my correctional counselor when I was back there that they had me assigned to, but they're hard to get, to see them.

H'rg. 11:21-11:23 a.m.

Plaintiff was asked about the grievance process and testified as follows:

> Q When something happens in, you know, the prison that you think is going against your interests and that you're maybe not

11

being treated fairly, you have an – you have an – a way to deal with that, right?

A Yes.

Q And what is that?

A Write a grievance. That's the only thing you can do, is write a grievance, and they get to you when they have time.

Q Okay, did you ever file a grievance saying, hey, I filed something with the floor officer on December 8, 2019, and I've never heard back?

A No, just, I didn't because how the situation occurred, how the officer slamming me up and did all that to me, I felt that they weren't gonna help me.

Q Okay, but you're not disputing that the process to look into this, not just to file your appeal, but to look into the status of it, it was available to you during that whole time, correct?

A Can you rephrase that?

Q Sure. You're not disputing that the process to file an appeal was available to you because your testimony is that you submitted a 602 to the floor officer on December 8, right?

A Yes.

Q Okay. Taking it a step further, if you haven't heard back from the institution about the status of that appeal, you testified you can submit a Form 22, correct?

A Yes.

Q But you didn't do that?

A I wasn't given any.

Hr'g. 11:23-11:24 a.m.

    Plaintiff acknowledged that he submitted a Form 22 on December 16, 2019, regarding a different appeal. (Exhibit M). Plaintiff confirmed that Exhibit N3 is an example of an occasion in which he utilized the 602 process to complain about not having received a response.

\\\

\\\

## IV. DISCUSSION

### b. Legal Standards for Exhaustion of Administrative Remedies

At the relevant time, "[t]he California prison grievance system ha[d] three levels of review; an inmate exhausts administrative remedies by obtaining a decision at each level." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (repealed June 1, 2020) & Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010)). See also Cal. Code Regs. tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies….") (repealed June 1, 2020).

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners are required to exhaust the available administrative remedies prior to filing the operative complaint. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam); Saddozai v. Davis, 35 F.4th 705 (9th Cir. 2022). The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); see also Ross v. Blake, 578 U.S. 632, 639-40, 642 (2016).

As discussed in Ross, 578 U.S. at 648, there are no "special circumstances" exceptions to the exhaustion requirement. The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." Id. at 639. The Ross Court described this qualification as follows:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. See 532 U.S., at 736, 738, 121 S.Ct. 1819….
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use….
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation…. As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

Id. at 643-44 (footnote omitted).

"When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017).

If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

In a summary judgment motion for failure to exhaust, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. However, "the ultimate burden of proof remains with the defendant." Id. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

    c. Analysis

        i. *Defendant's Motion for Summary Judgment*

For the reasons described in the Court's prior findings and recommendations (ECF No. 49), the Court finds that there is a genuine dispute of material fact regarding whether Plaintiff timely filed a grievance regarding the claim that is proceeding in this action that precludes

summary judgment. (See ECF No. 49). Accordingly, the Court continues to recommend that summary judgment be denied. However, the Court supplements its recommendation regarding that motion to include the following factual findings regarding Defendant's exhaustion defense.

        ii.    *Resolution of Dispute of Fact*

Plaintiff argued that he filed a grievance on December 8, 2019, regarding the alleged excessive force incident involving defendant Rios. Plaintiff said that he did not file a Form 22 because he was not given one and argued that his grievance was never processed because officers destroyed it, or it was misplaced. Thus, Plaintiff argues, that the grievance process was not available to him. Defendant, on the other hand, contended that Plaintiff never filed the December 8, 2019, grievance and thus failed to exhaust available administrative remedies.

After reviewing the evidence submitted at the evidentiary hearing, the Court recommends finding that Plaintiff has failed to meet his burden to show that administrative remedies were not available to him and thus Defendant is entitled to judgment in his favor based on the defense of failure to exhaust administrative remedies.

During the hearing, Plaintiff conceded that he does not have a copy of any grievance regarding the underlying incident or a copy of a Form 22 relating to the grievance, and that he never filed a later appeal or inquiry regarding the status of any such grievance. Plaintiff explains this absence by claiming that he did not feel comfortable filing any such documents because they would be seen by the same group of correctional officers who had been involved in the assault.

While the Court finds Plaintiff's explanation possible, it also lacks any evidentiary support. Given that the burden of proof is on Plaintiff to show that administrative remedies were not available to him by the preponderance of the evidence, the Court recommends finding for Defendant because Plaintiff did not meet this burden. Albino, 747 F.3d at 1172 (upon defendant's showing that administrative remedies existed, the burden shifts to plaintiff to show that the remedies were unavailable to him).

To begin with, Plaintiff kept such copies of other filed grievances in the past. (See, e.g., Exhibits M5-M6, O5-O7, R6). For example, a review of the evidence indicates that Exhibits

O5-O7 consist of a 602 filed by Plaintiff regarding credit for two college courses he completed, with three (3) copies of Form 22s attached to the 602. Exhibit R6 contains the letter Plaintiff wrote to the FBI and indicates that he kept a copy of an appeal he submitted regarding his meals. The fact that Plaintiff kept copies of some grievances, but not a copy of a grievance related to the underlying incident in this case, supports Defendant's position that Plaintiff never filed such a grievance.

Also, while Plaintiff alleges that an officer may have destroyed or misplaced his appeal, Plaintiff testified that he had never witnessed an officer discard or destroy an appeal. For example, Plaintiff testified:

> Q So you're testifying that sometimes the officers toss the appeals. What do you mean by that?
>
> A They get rid of your appeal, if it's something that has something to do with something bad for one of their peer officers, they get rid of them.
>
> Q Okay, have you ever seen that happen?
>
> A No, I mean I've never seen it in front of me. But they can act like they're gonna to turn it in and don't turn it in.

Hr'g. 11:19-11:20 a.m.

Plaintiff also concedes he did not check on the status of any grievance related to the incident in this case. Plaintiff testified that when he did not receive a response, he wrote to outside agencies, including the FBI. In the letter to the FBI, contained in Exhibits R4-R6, Plaintiff mentioned three appeals he filed regarding incidents unrelated to the alleged excessive force incident involving defendant Rios. Plaintiff stated in the letter that he had not received responses on those other appeals. However, while Plaintiff mentioned the alleged excessive force incident involving defendant Rios in this letter, Plaintiff did not state that he had filed a grievance about this incident or that he had not received a response.

Further, Plaintiff did not adequately explain why he did not file either a Form 22 or a Form 602 to check on the status of the appeal. Plaintiff was familiar with the process, as he had

16

filed Form 22s and 602s on prior occasions. (See, e.g., Exhibits N3, O5-O7, Q3, Q7).[15] Plaintiff testified only that he was not given a Form 22, a contention defense witnesses denied. Mr. Lujan testified that each housing unit has 602s available, and Ms. Ramos testified that an inmate has access to Form 22s and 602s in STRH. While Ms. Ramos testified that the most typical way an inmate receives forms is by requesting them from officers, forms are also located in the unit near the secure lockbox.

Plaintiff testified that he did not submit a Form 22 about any missing grievance because he was not provided with one:

> Q Okay. Taking it a step further, if you haven't heard back from the institution about the status of that appeal, you testified you can submit a Form 22, correct?
>
> A Yes.
>
> Q But you didn't do that?
>
> A I wasn't given any.

Hr'g. 11:24 a.m. However, the evidence establishes that Plaintiff had access to a Form 22 on December 4, 2019, and to a Form 22 and 602 on December 16, 2019. Plaintiff submitted a 602 on December 16, 2019, regarding the relocation of Plaintiff's personal property following his arrival at SATF. (Exhibits M3-M4). Plaintiff attached a copy of a Form 22 he had submitted with the original request on December 4, 2019, as well as a new Form 22 dated December 16, 2019. (Exhibits M5-M6). It is undisputed that the alleged excessive force incident with defendant Rios occurred on December 6, 2019. (ECF No. 41-2, p. 4; ECF No. 47, p. 2). Even if Plaintiff did not have a Form 22 on December 8, 2019, Plaintiff obtained one eight days later.

Plaintiff also admitted that he failed to seek help from a correctional counselor. Mr. Lujan testified that inmates have open access to correctional counselors. Plaintiff provided the following reason for failing to do so:

> Q Okay. Did you ever talk to your correctional counselor about it?

---

[15] Neither party testified extensively about Exhibit Q, but a review of the evidence indicates it contains copies of Form 22s Plaintiff submitted to check on the status of appeals unrelated to the present action.

> A   No, 'cause it's a different facility, and then they would've said I should've asked my correctional counselor when I was back there that they had me assigned to, but they're hard to get, to see them.

H'rg. 11:22-11:23 a.m.

While this explanation too is possible, it is yet another instance where Plaintiff lacks independent corroboration of him filing a grievance related to the underlying incident.

      iii.    *Plaintiff's Failure to Exhaust Available Administrative Remedies*

In sum, it is undisputed that an administrative remedy existed, and that Plaintiff was aware of its availability. (ECF Nos. 41-2, pgs. 3-5; ECF No. 47, p. 4; Hr'g. 11:23-11:24 a.m.). It is additionally undisputed that Plaintiff did not receive a merits decision from the final level of review on a grievance regarding the alleged excessive force incident. (ECF No. 41-2, pgs. 4-5; ECF No. 47, p. 3). After hearing all evidence presented by the parties regarding this dispute of fact at an Albino hearing, the Court recommends finding that Plaintiff did not meet his burden to show that administrative remedies were unavailable to him, and therefore the case should be dismissed for failure to exhaust available administrative remedies.

## V.    CONCLUSION AND RECOMMENDATIONS

Accordingly, the Court renews its recommendation, as explained in ECF No. 49, that Defendant's motion for summary judgment for non-exhaustion of administrative remedies be denied based on a genuine dispute of fact, and;

The Court RECOMMENDS:

1. This action be dismissed, in its entirety, for Plaintiff's failure to exhaust his available administrative remedies because Plaintiff did not exhaust his administrative remedies and Plaintiff failed to meet his burden to show that such remedies were unavailable to him; and
2. The Clerk of the Court be directed to close the case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, any party may file

written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 26, 2022**                    /s/ Erica P. Grosjean
                                                 UNITED STATES MAGISTRATE JUDGE